21-08587MB

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Cornelius Gaines, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information that is associated with the following subject accounts:

   **beaujames32@GMail.com**

   **jasonjames1911@GMail.com**

   which is stored at premises controlled by Google LLC (Google), an electronic communications services and/or remote computing services provider which is headquartered and accepts service at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A hereto. This Affidavit is made in support of an Application for a Search Warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B hereto. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in the Search Procedure section herein.

2. I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been so employed since November 28, 2017. I am a graduate of the ATF Special Agent Basic Training Academy. Prior to my employment with ATF, I was employed by the Chattanooga (Tennessee) Police

Department since September 2008.  I am currently assigned to the ATF Tucson Field Office Group I, which investigates firearms trafficking and the illicit movement of firearms within southern Arizona.   I have participated in investigations of federal firearms violations, firearms trafficking, illegal narcotics trafficking, armed drug trafficking, and conspiracy offenses.

3.   As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute search warrants issued under the authority of the United States.

4.   Along with other ATF Special Agents, I am currently involved in an investigation into the suspected violations of 18 U.S.C. § 922(a)(1)(A), Engaging in the Business of Dealing Firearms Without a License, and 18 U.S.C. § 922(a)(6), Making False Statements in Connection with the Acquisition of Firearms, committed by Jacob Allen ETCHART, SR.

5.   The statements in this Affidavit are based in part upon my investigation of this matter, and upon information provided by other ATF Special Agents.  Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A), Engaging in the Business of Dealing Firearms Without a License, and 18 U.S.C. § 922(a)(6), Making False Statements Connection with the in the Acquisition of Firearms, will be found within the information associated with the following subject accounts, **beaujames32@GMail.com** and **jasonjames1911@GMail.com**, stored at premises controlled by Google.

## STATUTORY AUTHORITY

6.  This investigation concerns alleged violations of 18 U.S.C. §§ 922(a)(1)(A) and 922(a)(6).

     (a) 18 U.S.C. § 922(a)(1)(A) prohibits any person from willfully engaging in the business of dealing, importing, or manufacturing firearms without a federal firearms license.

     (b) 18 U.S.C. § 922(a)(6) prohibits any person from knowingly making a false oral or written statement to a federally licensed firearm dealer, intended to deceive such firearms dealer with respect to a fact material to lawfulness of the sale.

## BACKGROUND INFORMATION ABOUT FIREARM OFFENSES

7.  As an ATF agent, I have executed and participated in search warrants related to the unlawful sale of firearms.  Based on my experience and the experience of fellow law enforcement agents with whom I have conversed, I know that people who sell firearms without a license often manage their sales like a business.  Thus, they tend to maintain and retain accounts or records of their transactions.  Such records detail amounts outstanding, owed, or expended, along with records of contacts, profits, and merchandise.  Records also include conversations with buyers and sellers, documenting sales.  Records include ledgers, acquisition and disposition (A&D) records, profit and loss, balance sheets, invoices, bank statements, and tax returns.  It is my experience that people who unlawfully sell firearms may keep these accounts and records in an electronic format.  Based on my training and experience, I know when criminal activity is long-term or ongoing, it is also common that equipment and records of the crime will be kept for some period of time.  Individuals who keep these records tend to want them readily accessible to facilitate their illegal business.

8. I know, based on my training and experience, as well as discussions with other experienced agents and investigators, that persons who engage in the business of dealing firearms without a license are likely to maintain documents and records either in paper form or on an electronic or digital media source. These documents and records will normally be retained for long periods of time, regardless of whether their value to the individual has diminished. Often, this type of evidence is generated, maintained, and forgotten. In fact, I have participated in search warrants where documentary evidence dating back several years has been found in both paper and digital form. I believe that the aforementioned subject Google accounts (further described in Attachment A hereto) contains evidence of past and ongoing criminal activity.

9. It is my experience that people who unlawfully sell firearms often keep evidence of financial transactions related to obtaining, transferring, secreting, or spending large sums of money acquired from engaging in the unlawful sale of firearms.

10. I know from my experience and training that people who unlawfully sell firearms will also accept items for trade in lieu of currency. I know sellers to accept narcotics, stolen items, and other forms of property in exchange for firearms.

11. In my experience, people who unlawfully sell firearms may take or cause to be taken photographs or videos of themselves and their associates, property, and merchandise. They often maintain photographs and/or videos at their residences or in other areas under their control. This is especially true for people who illegally sell firearms online, as photographs of the available merchandise are frequently shown online.

12. I have also learned that people who unlawfully sell firearms will often place their assets in names other than their own to avoid detection of such assets by law enforcement and the

Internal Revenue Service; that such other names are commonly those of family members, friends, and associates who accept title of such assets to avoid discovery and detection; that people who unlawfully sell firearms continue to use these assets and exercise dominion and control over them; and that they typically keep records of these transactions in their residences or in other areas under their control.

13. Based on my training and experience, persons who unlawfully sell firearms will often times purchase a firearm themselves and transfer the firearm to someone else shortly after the purchase.

14. Based upon my experience in conducting criminal investigations of violations of federal firearms and ammunition laws, I know that firearm and ammunition trafficking organizations have developed a number of methods to insulate their illegal activities from law enforcement detection. These methods are common to firearm and ammunition trafficking organizations to varying degrees of sophistication. One method that trafficking organizations have employed is to purchase firearms from the "secondary market" (through private sellers rather than Federal Firearms Licensees). Firearm and ammunition trafficking organizations often purchase firearms from the secondary market because a purchaser does not need to provide identification or undergo a background check in order to obtain a firearm from a private seller, as the purchaser is required to do when her or she purchases a firearm from a Federal Firearms Licensee.

15. I know that a purchaser must complete an ATF Form 4473, Firearms Transaction Record, to purchase a firearm from a Federal Firearms Licensee (FFL). In order to acquire a firearm, the purchaser must answer a question which asks: "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual

transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you." The purchaser must also acknowledge, by signature, that if he or she answers "Yes" to the question but is not the actual transferee/buyer, he or she has committed a felony under Federal law.

16. I know that firearm and ammunition trafficking organizations from Mexico utilize "straw purchasers" from the United States to illegally purchase firearms and ammunition. A straw purchaser is someone who knowingly acquires firearms and/or ammunition for someone who is prohibited by law from acquiring them or does not want his or her name associated with the acquisition of the firearms and/or ammunition.  Firearm and ammunition trafficking organizations typically employ and finance several straw purchasers to purchase firearms, ammunition and/or firearm accessories (such as magazines, gun cleaning supplies, etc.) from different FFLs – which are commonly referred to as "gun stores" or "gun shops" – retail stores; online retail websites; and internet-based sales, barter, or auction websites such as Gunbroker.com, GunsAmerica.com, and firearm groups on Facebook.com. Straw purchasers commonly frequent gun shows, purchase large amounts of firearms and ammunition, and purchase firearms and ammunition from numerous FFLs, retailers, online distributors, and internet websites or groups.  A vast number of firearms trafficking organizations from Mexico purchase similar firearms, which are referred to by ATF as "weapons of choice," and ammunition for such firearms.  These firearms include AK 47-type rifles and pistols (7.62x39mm caliber); AR 15-type rifles and pistols (5.56/.223 caliber); 9mm caliber, .40 caliber, .38 Super caliber, and .45 caliber pistols; and Barrett .50 BMG caliber rifles.

17. I know that illegal firearm and ammunition traffickers often utilize cellular telephones to communicate with other co-conspirators, FFLs, and individuals selling firearms on the secondary market. These cellular telephones are often held in the name of other living or fictitious persons. Further, firearm and ammunition traffickers change phone numbers and mobile devices frequently to limit law enforcement officials' ability to identify and track suspects' call histories.

18. I have been involved in several investigations that have uncovered individuals dealing firearms without a license in the secondary market. Often times, individuals will deal firearms without a license because they can sell firearms for a higher or similar price as they paid for the firearms. Also, often individuals will sell firearms without a license because they are in need of income to support their livelihood.

19. I know that individuals involved in dealing firearms without a license often post their firearms for sale on websites such as Gunbroker.com, Armslist.com, and Backpagegun.com, or on social media applications ("apps") such as Instagram or Snapchat. These individuals often utilize their cellular telephones to post their firearms for sale, communicate with potential buyers, and make meeting arrangements with buyers.

20. I know that firearms sold by individuals involved in dealing firearms without a license are often recovered by law enforcement agencies. This happens, in large part, because people who nefariously acquire firearms often obtain them from the secondary market, where background checks are not required.

21. Based on my training and experience, persons who unlawfully sell firearms will often purchase the same or similar firearms multiple times.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

22. Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Cornelius Gaines learned that on or about September 10, 2019, a Pioneer Arms Corporation model Hellpup 7.62x39mm caliber pistol with serial number PAC1125008 was recovered in Colonia Miravalle, Ciudad Obregon, Sonora, Mexico. The firearm was purchased on May 25, 2019, at The Arizona House of Guns, a FFL located in Tucson, Arizona. The time from the purchase of the firearm to the recovery was 108 days. The original purchaser of the firearm was Jacob Allen ETCHART, Sr.

23. SA Gaines further learned that on October 6, 2016, the ATF Phoenix Field Division mailed a Warning Notice of Straw Purchasing letter to ETCHART. A Warning Notice of Straw Purchasing informs an individual that purchasing a firearm intended for someone else violates 18 U.S.C. § 922(a)(6), and that the individual can be prosecuted for that violation.

24. An ATF Industry Operations Investigator searched the ATF Federal Licensing System, which maintains FFL information, to ascertain whether ETCHART possessed a Federal Firearms License. SA Gaines learned that ETCHART did not possess such a license.

25. On March 4, 2020, SA Gaines reviewed multiple sale reports for firearms purchases made by ETCHART. A multiple sale report is generated when an individual purchases two or more pistols from the same FFL within five business days, or when an individual purchases two or more semiautomatic rifles in the states of Arizona, California, Texas, and New Mexico within five business days. SA Gaines learned of the following purchases by ETCHART:

   a.   Aero Precision model X15 .223 caliber pistol with serial number AR11078, and ROMARM model Draco 7.62x39mm caliber pistol with serial number DA-3312-14, purchased from The Arizona House of Guns on August 10, 2019

   b.   Diamondback Arms model DB-15 5.56 caliber pistol with serial number DB1524767, purchased from The Arizona House of Guns on July 27, 2019

   c.   Pioneer Arms Corporation model Hellpup 7.62x39mm caliber pistol with serial number PAC1124975, purchased from The Arizona House of Guns on May 25, 2019

26. On March 11, 2020, SA Gaines and Homeland Security Investigations (HSI) SA Jose Huerta went to ETCHART's address of 14269 E Placita del Chaval, Vail, Arizona. ETCHART used this address when completing the ATF Form 4473 for the Hellpup 7.62x39mm caliber pistol (described in paragraph 22). This address was also listed on ETCHART's Arizona driver's license. When agents first arrived they were informed by a female, believed to be ETCHART's wife, that ETCHART was not home. ETCHART later arrived and agreed to speak with agents outside of his home. ETCHART recorded a video of the interview on his cellular phone. SA Gaines asked ETCHART about the Hellpup 7.62x39mm caliber pistol that he had purchased. ETCHART stated he remembered the purchase but believed that he had sold the firearm. SA Gaines informed ETCHART that this firearm had been recovered in Mexico and agents wanted to identify to whom the firearm was sold. ETCHART did not appear surprised to learn that this firearm was recovered in Mexico and informed the agents he could check his records as to whom he sold it. ETCHART then went inside his residence while agents waited outside. ETCHART returned outside and produced a picture of a handwritten bill of sale for the

firearm stored on a second cellular telephone. The bill of sale documented that Octavio

Sanchez, Arizona driver's license D06454870, purchased the firearm on July 10, 2019.

ETCHART believed that he sold the firearm on Armslist.com. (Armslist.com is an internet

marketplace for the purchasing, selling and trading of firearms and firearm accessories.)

ETCHART informed agents that he had not been to Mexico in a while.  SA Gaines asked

ETCHART about his firearm selling and purchasing habits.  ETCHART told agents that

he and sons like to shoot and build firearms as a hobby.  ETCHART stated that he

previously used the websites Backpage.com and Armslist.com to sell firearms. ETCHART

also said that he has not bought or sold a firearm in six to eight months. Agents asked

ETCHART whether he still possessed the firearms that he purchased in 2019 which were

identified in the multiple sale reports (discussed in paragraph 25).  ETCHART stated that

these firearms were in his possession.  ETCHART said he usually completes a bill of sale

for the firearms he sells.  Agents advised ETCHART to sell his firearms through a FFL.

SA Gaines offered ETCHART an application to become a FFL, but he declined to accept

it and instead stated that he would no longer sell firearms on the secondary market.

27. On November 5, 2020, SA Gaines was notified of fifteen firearms that had been recovered

at the Mariposa Port of Entry in Nogales, Arizona, on November 4, 2020.  Luis Manuel

Bray-Vasquez (hereafter referred to as Vasquez) was under surveillance by Homeland

Security Investigations (HSI) agents, who had information that firearms were going to be

illegally exported out of the United States.  HSI agents observed Vasquez meet with a

female in the parking lot of Walmart in Nogales, Arizona.  Vazquez then removed a large,

long cardboard box and a large canvas bag from a vehicle occupied by a second female

and placed them into his own vehicle.  Vasquez then exited the Walmart parking lot and

drove to the Mariposa Port of Entry. Vasquez was stopped and his vehicle was searched by Customs and Border Protection at the Port of Entry, at the request of HSI agents. Fifteen firearms were found in his vehicle. Vasquez admitted to smuggling firearms out of the United States and stated he was aware it was illegal to do so.

28. One of the firearms located in Vasquez's vehicle was a Century Arms International model VSKA 7.62x39mm caliber rifle with serial number SV7028294. SA Gaines learned that this firearm was purchased by ETCHART on September 4, 2020, from Second Amendment Sports, a FFL located in Tucson, 61 days before it was recovered in Vasquez's vehicle. SA Gaines obtained a copy of the ATF Form 4473 ETCHART completed when he purchased this firearm. The form documented that ETCHART also purchased two other firearms on September 4, 2020: a Century Arms International model VSKA 7.62x39mm caliber rifle with serial number SV7029366, and a Ruger model Ruger 5.7 5.7x28mm caliber pistol with serial number 641-53072.

29. The firearms listed below were also recovered in Vasquez's vehicle during the seizure at the Mariposa Port of Entry:

    a.  Century Arms model NAK-9 9mm caliber pistol

    b.  Three Century Arms International model VSKA 7.62x39mm caliber rifles

    c.  Three Pioneer Arms Corporation model Hellpup 7.62x39mm caliber pistols

    d.  Taurus model G3 9mm caliber pistol

    e.  I O Inc. (Inter Ordnance) model Sporter 7.62x39mm caliber rifle

    f.  Heckler & Koch model USC45 .45 caliber rifle

    g.  Barrett Firearms Manufacturing Company model 82A1 .50 BMG caliber rifle

    h.  Three AR-15 style rifles without any markings

30. On November 16, 2020, at approximately 4:55 p.m., SA Gaines called ETCHART at telephone number 520-331-6917. SA Gaines obtained this phone number from the receipt of ETCHART's firearms purchase from Second Amendment Sports on September 4, 2020 (discussed in paragraph 28).   ETCHART said he would call SA Gaines back.   At approximately 5:03 p.m., SA Gaines received a phone a call from ETCHART at the same telephone number.  SA Gaines requested to meet with ETCHART to conduct a follow-up interview about his previous firearm sale (discussed in paragraph 22) and the Century Arms International model VSKA 7.62x39mm caliber rifle with serial number SV7028294 that was recovered on November 4, 2020 (discussed in paragraph 28). ETCHART declined to meet but stated that if SA Gaines provided the information for a specific firearm, he could see if he had a bill of sale for that firearm and, if so, would send the bill of sale to SA Gaines electronically.  ETCHART then stated he has not completed a bill of sale for every firearm he sold.  SA Gaines again asked to meet and ETCHART declined.  ETCHART stated that he would not be able to provide details about to whom he sold firearms, but could only provide a "signature to a serial to a gun." SA Gaines understood this statement to mean ETCHART could provide limited information about the purchaser of a specific firearm he had sold.

31. On November 29, 2020, SA Gaines was made aware of a National Instant Criminal Background Check System (NICS) inquiry of ETCHART dated November 28, 2020. When an individual attempts to purchase a firearm from a FFL a NICS inquiry (also referred to as a background check) must be conducted.  There are three possible results of a NICS inquiry: proceed, which means the FFL can transfer the firearm to the purchaser; delay, which means the FFL must wait at least 72 hours to transfer the firearm (giving

NICS additional time to investigate information obtained during the initial background check); or deny, which means the purchaser is prohibited from acquiring the firearm and the FFL cannot transfer the firearm. By law, after 72 hours following a delayed NICS response, the FFL is allowed to transfer the firearm to the purchaser, even if NICS has not completed their additional background inquiry.

32. The NICS inquiry of ETCHART (discussed in paragraph 31) was generated by Elite Guns and Ammunition, a FFL located in Tucson. On December 1, 2020, SA Gaines contacted Elite Guns and Ammunition via telephone and spoke with the owner, Aaron Herman. Herman stated that he did not sell ETCHART the firearm. Herman explained that he was approached at the Crossroads of the West Gun Show by Jim Autry (the owner of FFL Autry's Antique Winchesters & Colts) to complete a NICS inquiry of ETCHART. Herman said he has previously conducted NICS inquiries for Autry at gun shows they both attended. Herman stated that he completed the NICS inquiry of ETCHART and was paid a service fee to do so. Herman stated that he believed ETCHART to be another dealer because he was wearing a wristband, and Herman was under the impression that only registered vendors of the gun show had wristbands. Herman provided a copy of the ATF Form 4473 for this sale, which documented that ETCHART purchased a Smith & Wesson model 648 22WMR caliber revolver with serial number DNA1486 from Autry. SA Gaines learned that the Crossroads of the West Gun Shows took place November 28 and 29, 2020, at the Pima County Fairgrounds (near Tucson).

33. On December 2, 2020, an ATF Industry Operation Investigator searched the ATF Federal Licensing System to ascertain whether ETCHART had obtained a Federal Firearms License. SA Gaines learned that ETCHART still did not possess such a license.

34. On December 2, 2020, SA Gaines contacted Jim Autry via telephone. Autry confirmed that he sold ETCHART the Smith & Wesson model 648 revolver (discussed in paragraph 32) at the Crossroads of the West Gun Show, and that he asked Herman to complete the NICS inquiry of ETCHART. Autry informed SA Gaines that he also was under the impression that ETCHART was a vendor at the gun show.

35. Later on December 2, 2020, SA Gaines spoke to Candice Ross, the Show Manager/Event Coordinator for the Crossroads of the West Gun Shows. Ross confirmed that ETCHART was a vendor at the gun show held on November 28 and 29, 2020. Ross stated to that ETCHART completed the necessary forms to be a vendor, stating he would be selling guns and knives. Ross said that ETCHART informed her that he wanted to be a vendor at more gun shows in the future, and specifically inquired about being a vendor at the gun show at the Arizona State Fairgrounds in Phoenix on December 4 through 6, 2020.

36. On December 3, 2020, SA Gaines received phone calls from Robert Templeton, another manager of the Crossroads of the West Gun Shows. Templeton informed SA Gaines that he spoke with ETCHART about the upcoming gun show in Phoenix, and ETCHART agreed to not be a vendor. Templeton told SA Gaines that he informed ETCHART that ATF had inquired about him.

37. Also on December 3, 2020, SA Gaines received an email from Ross. The email contained a photograph of a list of names and businesses. Based on his conversations with Ross, SA Gaines understood this to be a list of vendors from the Crossroads of the West Gun Show on November 28 and 29, 2020. Included on the list was, "Etchart, Jake 14269 E. Placita del Chaval Vail AZ 520-331-6917." Ross also explained in the email that ETCHART had come to the Arizona State Fairgrounds and attempted to set up as a vendor.

38. On December 29, 2020, SA Gaines observed ETCHART in the driveway of 14269 E. Placita del Chaval, operating on a white Toyota Tacoma.

39. SA Gaines subsequently learned that additional firearms originally purchased by ETCHART have been recovered in the possession of other individuals.  SA Gaines also learned of incidents in which information was provided that led to the trace of firearms purchased by ETCHART. A firearms trace is the process of tracking the movement of a firearm from its manufacture or introduction into U.S. commerce by the importer/manufacturer through the distribution chain (wholesalers and retailers), in order to identify the original purchaser.  A firearms trace can be completed without the physical recovery of the firearm; information such as serial number, manufacturer, caliber, and model can be used to trace the firearm to the original purchaser.  The information received by SA Gaines regarding the recovery of firearms originally purchased by ETCHART have in the possession of other individuals included the following:

   a. On April 23, 2011, Phoenix Police Department officers were dispatched to a domestic violence call at 3330 East Van Buren Street, Apartment 225, in Phoenix. Officers were advised that Biko Shakir was in possession of a handgun, pushed a victim, and left the area driving a silver Impala.  Officers located the silver Impala, conducted a traffic stop, and found a Taurus model PT24/740 PRO .40 caliber pistol with serial number SBM51854.  Shakir told officers he obtained the Taurus in a trade for his "AK47."  This firearm was recovered 876 days after it was purchased by ETCHART.

   b. On March 6, 2013, Scottsdale Police Department officers recovered a Masterpiece Arms (unknown model) 9mm caliber pistol with serial number B5112 at the

residence of Lukeroy Rose at 9389 East Via Del Sol in Scottsdale.  In furtherance of a fraud investigation, Scottsdale Police and the United States Postal Inspectors obtained and executed a search warrant at Rose's residence.  During the course of the search, officers located marijuana and the Masterpiece Arms pistol.  The firearm was recovered 1,585 days after it was purchased by ETCHART.

c.  On June 25, 2015, Tucson Police Department (TPD) officers recovered a KAHR Arms/Auto Ordnance model CT40 .40 caliber pistol with serial number AAA1946 in the possession of Orion Romero during a domestic assault investigation.  This firearm was recovered 287 days after it was purchased by ETCHART.

d.  On September 19, 2015, Mexican police officers in Ciudad Obregon, Sonora, detained an individual and seized a Zastava/Century Arms model PAP M92 PV 7.62x39mm caliber pistol with serial number M92PV038304.  This firearm was recovered 564 days after it was purchased by ETCHART.

e.  On October 27, 2015, ATF and TPD conducted an operation to purchase firearms with the use of an undercover officer (UC).  The UC purchased a German Sports Guns model GSG-522PK .22 caliber pistol with serial number A540912 from Charles Allen Cole III for $100.  Cole told the UC the firearm had been used in a homicide in the Tucson area, and officers later confirmed that the firearm was used in a homicide in Tucson on September 13, 2015.  The firearm was recovered 329 days after it was purchased from ETCHART.

f.  On November 27, 2017, Maritza Rubio and Jazmine Sepulveda attempted to smuggle a Century Arms model RAS47 7.62x39mm caliber pistol and a Glock model 19 9mm caliber pistol from the United States into Mexico through the

DeConcini Port of Entry in Nogales, Arizona. A cursory review of Sepulveda's cellular telephone revealed photographs of four firearms. One of the photographs depicted an Aero Precision model X15 .223 caliber rifle with serial number X092364. ETCHART purchased this firearm on October 28, 2017.

g. On August 21, 2019, agents from the Drug Enforcement Agency (DEA) in Guadalajara, Mexico, provided ATF agents with photographs obtained from Mexican authorities. The photographs depicted five firearms, including an I.O. model Sporter 7.62x39mm caliber rifle with serial number S020180 and a Pioneer Arms model Hellpup 7.62x39mm caliber rifle with serial number PAC1117983. ETCHART purchased these firearms on December 22, 2017, and February 24, 2018, respectively.

40. SA Gaines compiled a list of firearms known to be purchased by ETCHART in attempt to identify patterns. (Attachment C hereto.) The list was compiled from information obtained by contacting Tucson area FFLs and reviewing multiple sale reports that were generated in connection with ETCHART's purchases. This list does not include all firearms believed to have been purchased by ETCHART, as it is anticipated additional purchases will be discovered as this investigation continues. Based on this information, ETCHART has purchased at least 111 firearms between November 2, 2008, and December 18, 2020.

41. SA Gaines noted that ETCHART has purchased approximately 23 AK-47 style 7.62x39mm caliber rifles and pistols.

42. On January 6, 2021, ATF and HSI agents executed a federal search warrant obtained in the course of this investigation, which authorized the search of Jacob ETCHART's person, his residence of 14269 East Placita del Chaval, and electronic storage devices. Agents seized

over 40 bills of sale for firearms (including at least 35 dated between January 1, 2019, and January 6, 2021). These bills of sale included firearm make, model, serial number, purchaser's printed name, purchaser's signature, date of transfer, and purchaser's Driver's License number. Agents also seized firearms, computer hard drives, cellular telephones, and documents pursuant to the warrant.

43. Also on January 6, 2021, during the execution of the search warrant, ATF SA Creighton Brandt and HSI SA Tony Tran interviewed ETCHART. ETCHART made the following statements during the interview:

    a. He posts firearms for sale on Armslist using his cellular telephone. He uses a Google phone number (which he set up) so no one has his personal cellular telephone number. He communicates with potential buyers via text through his Google Voice account.

    b. He was only selling firearms on Armslist. His Armslist username was JasonJames1911. Between January 1, 2020, and December 31, 2020, he sold approximately ten firearms on Armslist.

    c. The conversations with people who have purchased firearms from him are on his Google Voice application.

    d. If the sale date was more recent (within the last two years), he sold the firearms using Armslist. For sales that occurred more than two years ago, he used Backpage.

    e. He sold firearms at a recent gun show at the Pima County Fairgrounds in Tucson (believed to be the Crossroads of the West Gun Show held on November 28 and 29, 2020, discussed in paragraph 32). He sold six firearms at this gun show. He brought eight rifles and eight handguns of his own to sell.

44. Between the dates of January 21 and 25, 2021, SA Gaines reviewed information contained on ETCHART's Moto Z cellular telephone. This phone was seized as evidence on January 6, 2021, pursuant to the search warrant. SA Gaines observed that the phone was synced with the following Google accounts:

> beaujames32@gmail.com
> jasonjames1911@gmail.com
> jasonjames4774@gmail.com
> jetchart1@gmail.com
> lakesideplumbing@gmail.com
> BladePage1@gmail.com
> prowatertreatment@gmail.com

SA Gaines located the application Google Voice installed on the phone. The email account registered to and synced with the Google Voice application was beaujames32@gmail.com. At the time of the review, the phone number assigned to the account was 520-260-8110.

45. SA Gaines observed the following text messages within the Google Voice application:

    a. January 5, 2021; from phone number 520-528-4513; "Will you take 1,000 for your ak?"

    b. January 5, 2021; from phone number 520-539-8654; "Do you still have the draco for sale man" and "You'll take 1200 correct"

    c. December 15, 2020; from the saved contact Tony Upper, phone number 520-591-6229; "I'm looking at both the century arms 9 ml. And the 7.62x39. Don't have a ccw. What would you take for both?"

    d. November 28, 2020; from phone number 858-283-9083; "Wondering if you had any draco for sale"

    e. October 29, 2020; from phone number 520-528-4513; "I have the cash, but I'm not looking to spend 1,250. What's the lowest you'll take"

46. On March 5, 2021, SA Gaines and SA Fenceroy interviewed Tony Homem about a Century
Arms Draco 9mm pistol and a Century Arms VSKA 7.62x39mm rifle he purchased from
ETCHART.  Agents learned about this purchase from the review of the bills of sale seized
pursuant to the search warrant conducted at ETCHART's residence (discussed in paragraph
42 herein).  Homem provided the following information:

   a. He confirmed that he purchased a Century Arms VSKA rifle and a Century Arms
   Draco pistol from an individual that advertised the firearms on Armslist.com. He
   purchased the firearms before Christmas.   (The bill of sale seized from
   ETCHART's residence documenting this purchase indicated Homem purchased the
   firearms on December 17, 2020.)  The seller had posted an advertisement for each
   of the firearms.  The advertisements contained the phone number 520-261-8110.

   b. Homem confirmed the copy of the bill of sale (seized from ETCHART's residence)
   shown by agents looked like the one he completed.

   c. When shown a picture of ETCHART, Homem stated, "I'm pretty sure that's him,"
   referring to the seller of the firearms.  Homem stated that the seller drove a red
   Toyota Tacoma, a vehicle which agents know ETCHART to own.   Homem also
   stated that the seller was a plumber, which agents know to be ETCHART's
   occupation.

   d. Homem met ETCHART on Marana Road near Interstate-10.

   e. Homem contacted ETCHART at phone number 520-261-8110 to purchase the
   firearms. Homem stated when he initially contacted ETCHART about purchasing
   the firearms on December 15, 2020, ETCHART told Homem he had sold the AK.

47. Homem allowed agents to take photos of the text conversation he had with ETCHART. SA Gaines reviewed the conversation regarding Homem's purchase and observed the following:

    a. On December 15, 2020, Homem messaged the seller he was interested in the 9mm (Draco pistol) and the 7.62x39 (Century Arms VSKA rifle). The seller informed Homem that he had sold the 7.62x39 and only had two 9mm for sale, which he was selling at the price of $2,200 for both or $1,200 for one. Homem told the seller he was only interested in the 7.62x39.

    b. On December 17, 2020, the seller messaged Homem, "Hey Tony are we still okay for later today". Homem responded, "Yep! Let me know when and where!"

48. SA Gaines knows that on December 17, 2020, ETCHART purchased a Century Arms VSKA 7.62x39mm rifle with serial number SV7040016 from Trail Boss Outfitters, a FFL located in Vail, Arizona. ETCHART completed the ATF Form 4473 and answered question 21a which asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form and continuation sheets?" ETCHART checked the "Yes" box.

49. On April 12, 2021, SA Gaines received records from Armslist for ETCHART's account through an administrative subpoena. SA Gaines observed that ETCHART used the email address jasonjames1911@gmail.com to register the account. Within the records were advertisement postings associated to the account. SA Gaines observed the following firearms and ammunition advertised for sale:

    a. Century International Arms AK47 Draco 9mm pistol for sale for $1,100. The caption read, "Draco 9mm AK century arms (1) 30 round, excellent condition. Only trade for 5.45 or 7.62AK47. CASH is Best! Signing a bill of sale and Arizona

drivers license required for sale. Have to have these or no sale. I prefer you have a ccw. Text (520) 261-8oneone0 if serious about buying. $1200 without ccw.... $1100 if you have a ccw. If you see this AD its available. I will remove AD when SOLD.... TEXT (520) 261-8oneone0"

b.   .45 ACP caliber ammo for sale $150. The caption read, "45 ACP 100rd bags. One shot reloads Winchester Primed like factory new 230 grain FMJ (Pistol SOLD) 300 rounds.... $200 or 200 rounds for $150 Only trade is for 5.7x28... 1 for 1. Text only please (520) 261-8oneone0. If ad is still up they're still available. PLEASE DON'T ASK. Cash preferred"

c.   Century International Arms 7.62x39mm rifle for sale for $1,250. The caption read, "AK47 century arms, (1) 30 round polish magazine, excellent condition. No Trades, cash only. Signing a bill of sale and Arizona drivers license required for sale. Have to have these or no sale. I prefer you have a ccw. $1350 without a ccw.... $1250 if you have a ccw. Can include 300 rounds with rifle for $250 or $300 without rifle. Get both while you still can! Text (520) 261-8oneone0 if serious about buying. If AD is still up its available, will remove when sold."

50.   SA Gaines noted that the phone number in the advertisements, "(520) 261-8oneone0," is consiste-nt with (520) 261-8110, the phone number assigned to ETCHART's Google Voice application.

51.   On January 7, 2021, SA Fenceroy submitted a preservation request to Google for the email addresses beaujames32@gmail.com and jasonjames1911@gmail.com, the email addresses synced to ETCHART's cellular telephone. On March 25, 2021, and June 3, 2021, SA Fenceroy submitted requests for extensions for the preservation request to Google.

## BACKGROUND CONCERNING GOOGLE ACCOUNTS

52. Google LLC is the provider of the internet-based accounts identified as **beaujames32@Gmail.com** and **jasonjames1911@GMail.com**.

53. Google provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online. Google accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Google services, such as instant messages and remote photo or file storage.

54. Based on my training and experience, I know that Google allows subscribers to obtain accounts by registering on the Google website.  During the registration process, Google asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment.  Google typically does not verify subscriber names.

55. Once a subscriber has registered an account, Google provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and these folders are linked to the subscriber's username.  Google subscribers can also use that same username or account in connection with other services provided by Google.  These services may include electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and

recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Drive (cloud storage), Google Maps (maps with driving directions and local business search) and other location services, and Google Play (which allow users to purchase and download digital content such as applications).

56. Thus a subscriber's Google account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing voice calls, video chats, SMS text messaging, and social networking. Depending on user settings, user-generated content derived from many of these services is normally stored on Google's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on Google's servers indefinitely if not deleted by the subscriber, and even after being deleted it may continue to be available on Google's servers for a certain period of time. Furthermore, a Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Google's servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created a Google account may be found within such computer files and other information created or stored by the Google subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

57. Based on my training and experience, I know that Google offers a service called Google Voice through which a Google account can be assigned a telephone number that can be used to make, record, and forward phone calls and to send, receive, store, and forward SMS

and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely unless the user deletes them. I also know that Google Voice numbers can be reassigned by Google to new users. I know that a user of Google Voice may change his or her currently assigned Google Voice phone number depending on availability.

58. Based on my training and experience, I know that providers such as Google also collect and maintain information about their subscribers, including information about a subscriber's use of Google services. This information can include the date on which the account was created, the length of service, records of log-in (session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the Google website), and other log files that reflect usage of the account. Providers such as Google also commonly have records of the Internet Protocol (IP) address used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Google typically collect and maintain location data related to a subscriber's use of Google services, including data derived from IP addresses and/or Global Positioning System (GPS) data.

59. Based on my training and experience, I know that providers such as Google also collect information relating to the devices used to access a subscriber's account, such as cellular telephones and laptop, desktop, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer

and relate to the specific machine or hardware, some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are assigned by Google in order to track what devices are using Google's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier (GUID), device serial number, mobile network information, telephone number, Media Access Control (MAC) address, and International Mobile Equipment Identity (IMEI). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used to find other Google accounts created or accessed by the same device and likely belonging to the same user, to find other types of accounts linked to the same device and user, and to determine whether a particular device recovered during course of the investigation was used to access the Google accounts.

60. Based on my training and experience, I know that Google maintains records that can link different Google accounts to one another by virtue of common identifiers such as e-mail addresses, telephone numbers, device identifiers, computer cookies, and names or addresses. These records can show that a single person, or single group of persons, used multiple Google accounts. Based on my training and experience, I also know that records concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Google account.

61. In summary, based on my training and experience in this context, I believe that the computers of Google are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers), as well as Google-generated information about its subscribers and their use of Google services

and other online services.  In my training and experience, all this information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  In fact, even if subscribers provide Google with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

62. Stored electronic data may provide relevant insight into the user's state of mind as it relates to the offenses under investigation.  For example, information in the Google account may indicate its user's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in effort to conceal them from law enforcement.

## SEARCH PROCEDURE

63. I am aware that computers located at Google, LLC. contain information and other stored electronic communications belonging to unrelated third parties.  Accordingly, this Affidavit and Application for Search Warrant seeks authorization solely to search the computer accounts and/or files by following the procedures described herein.

64. ATF Special Agents and other law enforcement personnel involved in the investigation are specially trained and experienced in identifying communications relevant to the crimes under investigation.  The personnel of Google are not.  I know that the manner in which the data is analyzed can be critical to the successful prosecution of any case based on this type of evidence.  In order to ensure that agents search only those accounts and/or files described in Attachment A, this Affidavit and Application for Search Warrant seek authorization to permit employees of Google to assist agents in the execution of this warrant.  To further ensure that ATF Special Agents or any other law enforcement

personnel executing this warrant search only those accounts and/or files described in Attachment A, the following procedures will be implemented:

   a. The search warrant will be presented to Google personnel who will be directed to isolate those accounts and files described in Attachment A.

   b. To minimize any disruption of computer service to innocent third parties Google, employees, at the direction of law enforcement personnel trained in the operation of computers, will create an exact duplicate of the computer accounts and files described in Attachment A, including an exact duplicate of all information stored in the accounts and files described in Attachment A.

   c. Google employees will provide, in electronic format, the exact duplicate of the accounts and files described in Attachment A, and all information stored in these accounts and files, to the agent who serves this search warrant.

   d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Google employees, and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this Search Warrant.

   e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Google employees and will not further review the original duplicate absent an Order of the Court.

## **CONCLUSION**

65. Based upon the information above, I respectfully submit that probable cause exists to believe that the subject Google accounts, **beaujames32@GMail.com** and **jasonjames1911@GMail.com** (described in Attachment A), was used between January 1, 2019, and January 6, 2021, in furtherance of violations Title 18, United States Code,

Sections 922(a)(1)(A) and 922(a)(6).

66. Based upon the information above, I believe that probable cause exists that on the computer systems owned, maintained, and/or operated by Google, an electronic communications services and/or remote computing services provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043, there exists evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 922(a)(1)(A) and 922(a)(6).  By this Affidavit and Application, I request that the Court issue a Search Warrant directed to Google to allow agents to seize e-mail and other information (described in Attachment B) stored on Google servers for the subject accounts and follow the search procedures described herein (paragraphs 63-64).

Further affiant sayeth not.

I swear, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge, information and belief.

CORNELIUS GAINES
Digitally signed by CORNELIUS GAINES
Date: 2021.06.22 16:55:51 -07'00'

Cornelius Gaines
Special Agent,
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn and subscribed to me telephonically in Tucson, Arizona, on June 23rd, 2021.

Honorable D. Thomas Ferraro
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This Search Warrant applies to information associated with the Google LLC accounts identified as **beaujames32@GMail.com** and **jasonjames1911@GMail.com,** stored at premises owned, maintained, controlled, or operated by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California  94043.

**ATTACHMENT B**

**Particular Things to be Seized and Procedures for Execution of the Search Warrant**

I.      **Information to be Disclosed by Google LLC to Facilitate Execution of the Search Warrant**

Any and all information, photographs, records, communications, and data, in whatever form, related to and contained in the subject accounts, **beaujames32@GMail.com** and **jasonjames1911@GMail.com**, described in Attachment A, from January 1, 2019, through January 6, 2021. To the extent that this information is within the possession, custody, or control of Google, including any records that have been deleted but are still available to Google or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government corresponding to the subject accounts:

a.      The contents of all communications and related transactional records for all Google services used by the account subscriber/user, such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, Google Voice call services, or remote computing services, including incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);

b.      The contents of all other data and related transactional records for all Google services used by the account subscriber/user, such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant

messaging or chat services, Google Voice call services, or remote computing services including any information generated, modified, or stored by the user(s) or Google in connection with the subject accounts (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

     c.     All records and other information concerning any document or other computer file created, stored, revised, or accessed in connection with the subject accounts or by an account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

     d.     All records regarding identification of the subject accounts, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including IP addresses, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

     e.     All records pertaining to devices associated with the subject accounts and software used to create and access the accounts, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities (IMEIs), Mobile Equipment Identifiers (MEIDs), Global Unique Identifiers (GUIDs), Electronic Serial Numbers (ESNs), Android Device IDs, phone numbers, Media Access Control (MAC) addresses, operating system

information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s).

     f.     Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Google account (including both current and historical accounts) ever linked to the subject accounts by a common e-mail address (such as a common recovery e-mail address) or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses, registration or login cookies or similar technologies, or any other unique device or user identifier.

Google shall deliver the information set forth above via United States mail, courier, or e-mail to:

SA Cornelius Gaines
ATF
2255 W. Ina Road, Suite 300
Tucson, AZ 85756
Cornelius.Gaines@atf.gov


**II.    Information to be Seized by the Government**

    All information described in Section I above that constitutes fruits, evidence and instrumentalities of the offenses of Engaging in the Business of Dealing Firearms Without a License, in violation of Title 18, United States Code, Section 922(a)(1)(A), and Making False Statements in Connection with the Acquisition of Firearms, in violation of Title 18, United States

Code, Section 922(a)(6), including correspondence, records, documents, photographs, videos, electronic mail, chat logs, instant messages, and electronic messages, that constitutes the following:

      a.     Information pertaining to, including attempting and conspiring to engage in, the above offenses;

      b.     Preparatory steps taken in furtherance of the acquisition, possession, transfer, and transportation of firearms and ammunition for the purposes of illegal firearms and ammunition sales and trafficking;

      c.     Negotiations for firearms, ammunition, and firearm related items, including correspondence that lists the contact information or other identifying information of the person(s) involved and payment information, including bank account, wire transfer, or commercial money remitter codes and information;

      d.     The identity of the person(s) who created or used the subject accounts, including records that help reveal the whereabouts of such person(s);

      d.     Identification of coconspirators, accomplices, and aiders and abettors in the commission of the above offenses;

      e.     Records relating to the person(s) who created, used, or communicated with the subject accounts about matters relating to the criminal activity described in the Affidavit, including identification of coconspirators, accomplices, and aiders and abettors in the commission of the above offenses, and records that help reveal their whereabouts;

      f.     Credit card and other financial information including bills and payment information;

g.      Evidence of who used, owned, or controlled the subject accounts, including evidence of their whereabouts;

h.      Evidence of the times the subject accounts were used;

i.      Passwords, and encryption keys and other access information that may be necessary to access the subject accounts and other associated accounts.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS<br>PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)</u>

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by Google LLC. and my official title is _____.  I am a custodian of records for Google LLC.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google LLC and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes, etc.). I further state that:

      a.      All records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

      b.      Such records were kept in the ordinary course of a regularly conducted business activity of Google LLC; and

      c.      Such records were made by Google LLC as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____      _____

Date                    Signature

**ATTACHMENT C**

**KNOWN FIREARM PURCHASES BY ETCHART**

| Date | FFL | Make | Model | Caliber | Serial Number | Type |
|---|---|---|---|---|---|---|
| 12/18/2020 | Turner's Outdoorsman | Century Arms | VSKA | 7.62x39mm | SV7039260 | Rifle |
| 12/17/2020 | Trail Boss Outfitters | Century Arms | VSKA | 7.62x39mm | SV7040016 | Rifle |
| 12/2/2020 | Diamondback Shooting Sports | Ruger | Ruger-57 | 5.7x28mm | 641-57479 | Pistol |
| 11/28/2020 | Autry Antique Winchesters & Colts | Smith & Wesson | 648 | .22Mag | DNA1486 | Revolver |
| 11/25/2020 | Ultra Precision Firearms & Ammo | Ruger | Ruger-57 | 5.7x28mm | 641-50593 | Pistol |
| 11/25/2020 | Ultra Precision Firearms & Ammo | Savage | AXIS II XP | .223 | N411174 | Rifle |
| 10/24/2020 | Second Amendment Sports | Spikes Tactical | SL-15 INFIDEL | multiple | THUG00669 | Rifle |
| 9/4/2020 | Second Amendment Sports | Century Arms | VSKA | 7.62x39mm | SV7029366 | Rifle |
| 9/4/2020 | Second Amendment Sports | Ruger | Ruger-57 | 5.7x28mm | 641-53072 | Pistol |
| 9/4/2020 | Second Amendment Sports | Century Arms | VSKA | 7.62x39mm | SV7028294 | Rifle |
| 7/24/2020 | Second Amendment Sports | ROMARM/ Century Arms | Mini Draco | 7.62x39mm | PE-5062-2018 | Pistol |
| 7/17/2020 | Ultra Precision Firearms & Ammo | Czech Small Arms | VZ-61 | .32ACP | 6101910 | Pistol |
| 7/17/2020 | Ultra Precision Firearms & Ammo | Hearing Protection | Optimus | 9mm | OP3424 | Silencer |
| 7/17/2020 | Ultra Precision Firearms & Ammo | Czech Small Arms | VZ-61 | 9mm Makarov | 69M00587 | Pistol |
| 6/22/2020 | Second Amendment Sports | Nova Modul /Century Arms | NAK9 Draco | 9mm | RONVMB11181 4445 | Pistol |
| 6/22/2020 | Second Amendment Sports | Nova Modul /Century Arms | NAK9 Draco | 9mm | RONVMB717 06175 | Pistol |
| 6/22/2020 | Second Amendment Sports | Nova Modul /Century Arms | NAK9 Draco | 9mm | RONVMB7181 4344 | Pistol |
| 5/9/2020 | Second Amendment Sports | Century Arms | VZ2008 Sporter | 7.62x39mm | VZ08PM-012860 | Rifle |
| 5/9/2020 | Second Amendment Sports | ROMARM/ Century Arms | Paratrooper | 7.62x39mm | PT-000416-19 | Rifle |
| 5/8/2020 | Ultra Precision Firearms & Ammo | Silencer Co | Octane 45k | .45ACP | OCT45k4381 | Silencer |

| 3/21/2020 | Diamondback Shooting Sports | Sig Sauer | 556 | 5.56mm | I5017874 | Rifle |
|---|---|---|---|---|---|---|
| 2/15/2020 | Diamondback Shooting Sports | Ruger | Mini 14 | .223 | 185-33206 | Rifle |
| 8/10/2019 | Arizona House of Guns | ROMARM/ Century Arms | Draco | 7.62x39mm | DA-3312-14 | Pistol |
| 8/10/2019 | Arizona House of Guns | Aero Precision | X-15 | .223 | AR11078 | Pistol |
| 8/10/2019 | Arizona House of Guns | Anderson Manufacturing | AM-15 | 5.56mm | 19155803 | Pistol |
| 7/30/2019 | Ultra Precision Firearms & Ammo | Aero Precision | M4E1 | multiple | M4-0091711 | Receiver |
| 7/30/2019 | Ultra Precision Firearms & Ammo | Aero Precision | M5 | multiple | US87249 | Receiver |
| 7/27/2019 | Arizona House of Guns | Diamondback Arms | DB-15 | 5.56mm | DB1524767 | Pistol |
| 7/27/2019 | Arizona House of Guns | Zastava /Century Arms | PAP M92 PV | 7.62x39mm | M92PV055441 | Pistol |
| 5/25/2019 | Arizona House of Guns | Pioneer Arms Corp | Hellpup | 7.62x39mm | PAC1125008 | Pistol |
| 5/25/2019 | Arizona House of Guns | Pioneer Arms Corp | Hellpup | 7.62x39mm | PAC1124975 | Pistol |
| 4/20/2019 | Diamondback Shooting Sports | Radical Firearms | RF-15 | 5.55mm | 19-000722 | Rifle |
| 2/8/2019 | Arizona House of Guns | Heckler & Koch | VP9 SK | 9mm | 232-040598 | Pistol |
| 2/8/2019 | Arizona House of Guns | Heckler & Koch | VP9 SK | 9mm | 232040609 | Pistol |
| 1/3/2019 | Diamondback Shooting Sports | HWM / EAA | Windicator | .38 SPL | 1580060 | Revolver |
| 12/20/2018 | Diamondback Shooting Sports | Sig Sauer | P220 | .45ACP | 395RP2258 | Pistol |
| 11/23/2018 | Second Amendment Sports | Sig Sauer | SP2022 | 9mm | 24B058768 | Pistol |
| 11/23/2018 | Second Amendment Sports | Beretta | PX4 Storm | .40SW | PY119505 | Pistol |
| 11/23/2018 | Second Amendment Sports | Smith & Wesson | M&P Shield 45 | .45ACP | HXC7295 | Pistol |
| 11/9/2018 | Arizona House of Guns | CZ | CZ P-10C | 9mm | C472494 | Pistol |
| 11/9/2018 | Arizona House of Guns | Walther | PPQ | 9mm | FA02978 | Pistol |
| 2/24/2018 | Arizona House of Guns | Pioneer Arms Corp | Hellpup | multiple | PAC1117983 | Pistol |
| 2/24/2018 | Arizona House of Guns | Sig Sauer | SP2022 | 9mm | 246058768 | Pistol |
| 2/24/2018 | Arizona House of Guns | Heckler & Koch | VP9 | 9mm | 224-210732 | Pistol |

| 2/24/2018 | Arizona House of Guns | Heckler & Koch | VP9 | 9mm | 224-210734 | Pistol |
|---|---|---|---|---|---|---|
| 2/24/2018 | Arizona House of Guns | Sig Sauer | P224 | .40 SW | 50A002236 | Pistol |
| 2/24/2018 | Arizona House of Guns | Taurus | PT738 TCP | .380auto | 64530E | Pistol |
| 2/24/2018 | Arizona House of Guns | Glock | 22 | .40 SW | HRS161 | Pistol |
| 12/22/2017 | Arizona House of Guns | Aero Precision | X-15 | 5.56mm | X085352 | Rifle |
| 12/22/2017 | Arizona House of Guns | Ruger | SR9E | 9mm | 338-17069 | Pistol |
| 12/22/2017 | Arizona House of Guns | Ruger | SR9E | 9mm | 338-17071 | Pistol |
| 12/22/2017 | Arizona House of Guns | Ruger | SR9E | 9mm | 338-17827 | Pistol |
| 12/22/2017 | Arizona House of Guns | IO INC | Sporter | 7.62x39mm | S020180 | Rifle |
| 12/22/2017 | Arizona House of Guns | Aero Precision | X-15 | 5.56mm | X085392 | Rifle |
| 12/22/2017 | Arizona House of Guns | Aero Precision | X-15 | 5.56mm | X085393 | Rifle |
| 12/22/2017 | Arizona House of Guns | Zastava /Century Arms | NPAPM70 | 7.62x39mm | NPAP056742 | Rifle |
| 12/22/2017 | Arizona House of Guns | Maverick Arms | 88 | 12 gauge | 223605 | Shotgun |
| 12/22/2017 | Arizona House of Guns | Maverick Arms | 88 | 12 gauge | 228702 | Shotgun |
| 12/22/2017 | Arizona House of Guns | Emperor Firearms | MX | 12 gauge | MDR17-P0299 | Shotgun |
| 12/22/2017 | Arizona House of Guns | Beretta | PX4 | .40 SW | PY119505 | Pistol |
| 11/10/2017 | Arizona House of Guns | Taurus | 85 | .38 Special | KR62745 | Revolver |
| 11/10/2017 | Arizona House of Guns | Taurus | 85 | .38 Special | KS81859 | Revolver |
| 10/28/2017 | Arizona House of Guns | Aero Precision | X-15 | multiple | X092364 | Rifle |
| 10/28/2017 | Arizona House of Guns | Taurus | PT840 | .40 SW | SCU64163 | Pistol |
| 10/28/2017 | Arizona House of Guns | Ruger | MARK II | .22 | 221-14432 | Pistol |
| 10/28/2017 | Arizona House of Guns | Smith & Wesson | 622 | .22 | TCP9096 | Pistol |
| 10/28/2017 | Arizona House of Guns | Taurus | The Judge | .45 Colt/ 410GA | HU940368 | Revolver |
| 10/28/2017 | Arizona House of Guns | Ruger | LCP II | .380 Auto | 380167989 | Pistol |
| 10/28/2017 | Arizona House of Guns | Federal Armament | FP-15 | .223 | P00248 | Pistol |
| 10/28/2017 | Arizona House of Guns | Taurus | 85 | .38 Special | KS73894 | Revolver |
| 10/28/2017 | Arizona House of Guns | NORINCO | 320 | 9mm | MSA10462 | Rifle |
| 10/28/2017 | Arizona House of Guns | Aero Precision | X-15 | multiple | X092379 | Rifle |
| 10/28/2017 | Arizona House of Guns | Bear Creek Arsenal | BCA15 | 5.56mm | 13190 | Rifle |
| 10/28/2017 | Arizona House of Guns | Bear Creek Arsenal | BCA15 | 5.56mm | 13831 | Rifle |
| 10/28/2017 | Arizona House of Guns | Century Arms | RAS47 | 7.62x39mm | RAS47086044 | Rifle |
| 6/27/2017 | Arizona House of Guns | Palmetto State Armory | PA-10 | .308 | PF018977 | Rifle |
| 6/27/2017 | Arizona House of Guns | Palmetto State Armory | PA-10 | .308 | PF018978 | Rifle |

| 6/27/2017 | Arizona House of Guns | Palmetto State Armory | PA-10 | .308 | PF019212 | Rifle |
|---|---|---|---|---|---|---|
| 6/27/2017 | Arizona House of Guns | Palmetto State Armory | PA-10 | .308 | PF019224 | Rifle |
| 6/27/2017 | Arizona House of Guns | Smith & Wesson | M&P 9 Shield | 9mm | HYA6421 | Pistol |
| 6/27/2017 | Arizona House of Guns | Smith & Wesson | M&P 9 Shield | 9mm | HXZ2974 | Pistol |
| 5/20/2017 | Diamondback Shooting Sports | Norinco/ B-West | MAK-90 Sporter | 7.62x39mm | 94109089 | Rifle |
| 4/15/2017 | Arizona House of Guns | HS Produkt / Springfield | XDS | 9mm | S3742585 | Pistol |
| 4/15/2017 | Arizona House of Guns | HS Produkt / Springfield | XDS | .45 ACP | S3333439 | Pistol |
| 4/15/2017 | Arizona House of Guns | Smith & Wesson | M&P 9 Shield | 9mm | HDF5967 | Pistol |
| 4/15/2017 | Arizona House of Guns | Smith & Wesson | M&P 9 Shield | 9mm | HDH5683 | Pistol |
| 4/15/2017 | Arizona House of Guns | Palmetto State Armory | PA-15 | 5.56mm | LW305414 | Rifle |
| 4/15/2017 | Arizona House of Guns | Palmetto State Armory | PA-15 | 5.56mm | LW305415 | Rifle |
| 2/16/2017 | Diamondback Shooting Sports | Norinco/ CSI | NHM90 | 7.62x39mm | 29371 | Rifle |
| 12/1/2016 | Arizona House of Guns | Ruger | 22 Charger | .22 | 491-04714 | Pistol |
| 12/1/2016 | Arizona House of Guns | Ruger | 22 Charger | .22 | 491-04816 | Pistol |
| 12/1/2016 | Arizona House of Guns | Ruger | 22 Charger | .22 | 491-04880 | Pistol |
| 10/13/2015 | Diamondback Shooting Sports | Remington | 1911 | .45 ACP | RH 31540A | Pistol |
| 12/3/2014 | EZ Money Pawn | German Sports Guns | GSG-522PK | .22 | A540912 | Pistol |
| 9/11/2014 | Craig Listerz | KAHR Arms /Auto Ordnance | CT40 | .40 SW | AAA1946 | Pistol |
| 9/11/2014 | Craig Listerz | KAHR Arms /Auto Ordnance | CT40 | .40 SW | AAA1945 | Pistol |
| 6/7/2014 | Craig Listerz | Smith & Wesson | M&P 40 | .40 SW | DVH1561 | Pistol |
| 6/7/2014 | Craig Listerz | Smith & Wesson | M&P 40 | .40 SW | DWJ7696 | Pistol |
| 6/7/2014 | Craig Listerz | Zastava | PAP M92 PV | 7.62x39mm | M92PV027068 | Pistol |
| 3/5/2014 | Craig Listerz | Zastava /Century Arms | PAP M92 PV | 7.62x39mm | M92PV038304 | Pistol |
| 3/5/2014 | Craig Listerz | Zastava /Century Arms | PAP M92 PV | 7.62x39mm | M92PV036891 | Pistol |

| 3/5/2014 | Craig Listerz | Zastava /Century Arms | PAP M92 PV | 7.62x39mm | M92PV036549 | Pistol |
|---|---|---|---|---|---|---|
| 3/23/2013 | Second Amendment Sports | Franklin Armory | HSC-15 | multiple | T-1391 | Receiver |
| 3/23/2013 | Second Amendment Sports | Franklin Armory | HSC-15 | multiple | FA-2124X | Receiver |
| 3/27/2012 | Marksman Pistol Institute | FEG | N/A | 7.62x39mm | DA8098H | Rifle |
| 3/27/2012 | Marksman Pistol Institute | FEG | N/A | 7.62x39mm | DN3743H | Rifle |
| 4/11/2009 | Murphy's Gun Shop | German Sports Guns | GSG-5P | .22 | A297490 | Pistol |
| 4/11/2009 | Murphy's Gun Shop | German Sports Guns | GSG-5P | .22 | A297670 | Pistol |
| 11/28/2008 | Second Amendment Sports | Taurus | PT24/7 | 9mm | TBM47659 | Pistol |
| 11/28/2008 | Second Amendment Sports | Taurus | PT24/7 | .40 SW | SBM51054 | Pistol |
| 11/2/2008 | Guns N Jewelry | Masterpiece Arms | N/A | 9mm | B5112 | Pistol |